UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTA PARTNERS, LLC<br><br>      Plaintiff,<br><br>-against-<br><br>MICROCLOUD HOLOGRAM, INC.<br><br>      Defendant. | Case No. 23-cv-7825<br><br>**COMPLAINT** |

  Plaintiff Alta Partners, LLC ("Alta") files this action against Defendant MicroCloud Hologram, Inc. ("MicroCloud" or the "Company") and alleges as follows:

## INTRODUCTION

  1. Alta brings this action to remedy MicroCloud's breaches of an agreement governing public warrants (the "Public Warrants").

  2. The Public Warrants were originally issued by a special purpose acquisition company ("SPAC") called Golden Path Acquisition Corporation ("Golden Path SPAC") pursuant to a June 21, 2021 warrant agreement (the "Warrant Agreement"). A copy of the Warrant Agreement is attached hereto as **Exhibit A**.

  3. On September 16, 2022, Golden Path SPAC and MicroCloud completed a "de-SPAC" merger (the "Business Combination"), which resulted in the formerly privately-owned MicroCloud becoming a public company.

  4. In connection with the Business Combination, MicroCloud assumed Golden Path SPAC's obligations under the Warrant Agreement.

  5. Pursuant to the Warrant Agreement, holders are entitled to exercise the Public Warrants by purchasing shares of MicroCloud's common stock at a price of $10.00 per share

1

once three conditions are satisfied. First, 30 days must have passed since the completion of the Business Combination. Second, the shares of common stock underlying the Public Warrants (the "Warrant Shares") must be registered under the Securities Act of 1933 (the "Securities Act"). Third, there must be a current prospectus relating to such Warrant Shares.

6. To ensure that Public Warrant holders were given the opportunity to exercise, MicroCloud was required under the Warrant Agreement to use its "best efforts" to register the Warrant Shares "as soon as practicable, but in no event later than fifteen (15) Business Days after the closing of its initial Business Combination."

7. If MicroCloud failed to register the Warrant Shares within 60 days of the Business Combination, MicroCloud was obligated to permit holders to exercise their Public Warrants on a "cashless basis." By exercising on a cashless basis, holders could exchange their Public Warrants for a certain number of shares of common stock as determined by a formula rather than paying the exercise price of $10.00 per share.

8. The Business Combination closed on September 16, 2022.

9. In breach of the Warrant Agreement, MicroCloud failed to use its best efforts to register the Warrant Shares.

10. After MicroCloud failed to register the Warrant Shares within 60 days of the closing of the Business Combination, Alta sought to exercise its Public Warrants on a cashless basis.

11. In a second breach of the Warrant Agreement, MicroCloud refused Alta's requests to exercise its Public Warrants on a cashless basis.

12. As of the date of this Complaint, nearly one year after the closing of the Business Combination, MicroCloud has still failed to register the Warrant Shares and has refused to

permit Alta and other holders of Public Warrants to exercise on a cashless basis.

14. Instead, MicroCloud has filed a registration statement that, upon becoming effective, would allow MicroCloud to reward its own insiders with additional shares of stock.

14. Through this action, Alta seeks damages arising from MicroCloud's multiple breaches of its obligations under the Warrant Agreement.

## JURISDICTION AND VENUE

15. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy substantially exceeds $75,000.

16. This Court may exercise personal jurisdiction over Defendant pursuant to 28 U.S.C.§ 1391 based on the terms of the Warrant Agreement. Section 9.3 of that Agreement provides that the parties "irrevocably submit[]" to the jurisdiction of "the courts of the State of New York or the United States District Court for the Southern District of New York." Section 9.3 further provides that the courts of the State of New York or the United States District Court for the Southern District of New York have exclusive jurisdiction over "any action, proceeding or claim . . . arising out of or relating in any way to this Agreement," and the parties "waive[] any objection to such jurisdiction."

## THE PARTIES

17. Plaintiff Alta is a limited liability company, which is a citizen of each state where one or more of its members is a citizen. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016). Alta has two members, Steven Cohen, who is domiciled in Puerto Rico, and Howard Cohen, who is a citizen of New York. Alta is the beneficial owner of approximately

1,700,000 Public Warrants and has taken steps to become the Registered Holder of these Public Warrants.

18. Defendant MicroCloud, a provider of holographic technology, is a public company whose common stock is traded on the NASDAQ under the symbol HOLO. MicroCloud is a Cayman Islands corporation with its principal place of business in China.

## FACTS

### I. Background on SPACs

19. A SPAC, also known as a blank check company, is a publicly traded company that holds cash in trust for its investors and exists solely for the purpose of identifying a non-public target company to invest in, combine with, and take public. Taking a company public through a SPAC is an alternative to the traditional initial public offering ("IPO") process. This take-public transaction is usually referred to as a "de-SPAC" transaction.

20. The sponsors of the SPAC and the insiders of the target company typically receive fees, benefits, and awards of stock as part of the de-SPAC transaction.

21. These characteristics have led some commentators to criticize SPACs for benefiting SPAC sponsors and insiders at the expense of retail investors.

22. The de-SPAC transaction and the new securities to be issued upon the closing of the business combination are typically registered with the Securities and Exchange Commission ("SEC") in a Form S-4 registration statement.

23. Following a successful business combination with a target company, investors in the SPAC become shareholders of the target company.

### II. Golden Path SPAC and the Public Warrants

24. Golden Path SPAC raised $57.5 million through its initial IPO.

25. Investors in Golden Path SPAC paid $10.00 per unit, with each unit consisting of one share of Golden Path SPAC common stock, one right to receive one tenth (1/10) of a share of Golden Path SPAC common stock, and one Public Warrant.

26. On September 10, 2021, Golden Path SPAC entered an agreement to merge with MicroCloud.

27. Golden Path SPAC filed a Form S-4 on September 29, 2021 in a purported attempt to register with the SEC the de-SPAC transaction and the new shares of MicroCloud common stock that would be issued upon its closing. Golden Path SPAC did not include the Public Warrants or the Warrant Shares on the Form S-4.

28. On September 2, 2022, MicroCloud requested that the SEC withdraw the Form S-4.

29. At no point did Golden Path SPAC file a registration statement for the Warrant Shares underlying the Public Warrants, as required by the Warrant Agreement.

30. The Business Combination closed on September 16, 2022.

31. In connection with the closing of the Business Combination, MicroCloud assumed the obligations of the Warrant Agreement, including the obligation to issue shares of MicroCloud's common stock upon the exercise of the Public Warrants.

### III.  The Terms of the Public Warrants

32. The Public Warrants were issued pursuant to the Warrant Agreement between Golden Path SPAC and Vstock Transfer LLC, dated June 21, 2021.

33. Pursuant to Section 4.4 of the Warrant Agreement, upon the closing of the Business Combination, holders of Public Warrants were entitled to enforce their rights against the newly combined company, MicroCloud.

34. Pursuant to Sections 3.2 and 3.3.2 of the Warrant Agreement, MicroCloud's Public Warrants were exercisable upon the passage of 30 days from completion of the Business Combination, provided the Warrant Shares were registered under the Securities Act and a prospectus relating to the Warrant Shares was current. The Warrant Agreement set the exercise price at $10.00.

35. Pursuant to Section 7.4.1 of the Warrant Agreement, MicroCloud was obligated to "as soon as practicable, but in no event later than fifteen (15) Business Days after the closing of its initial Business Combination . . . use its best efforts to file with the [SEC] a registration statement for the registration, under the Securities Act, of the [Warrant Shares]."

36. MicroCloud similarly agreed to use "best efforts to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto."

37. Pursuant to Section 7.4.1 of the Warrant Agreement, if a registration statement for the Warrant Shares "has not been declared effective by the 60th Business Day following the closing of the Business Combination, holders of the Warrants shall have the right . . . beginning on the 61st Business Day after the closing of the Business Combination . . . to exercise such Warrants on a 'cashless basis.'"

IV. **MicroCloud Fails to Register the Warrant Shares and Rejects Alta's Attempt to Exercise Its Public Warrants on a Cashless Basis**

38. MicroCloud did not register the Warrant Shares within 15 days after the closing of the Business Combination as required by the Warrant Agreement.

39. In fact, MicroCloud never filed a registration statement for the Warrant Shares.

40. Because of MicroCloud's failure to register the Warrant Shares, the Public Warrant holders had the right to exercise their warrants on a "cashless basis."

41. Beginning on January 10, 2023, 76 days after the closing of the Business Combination, Alta sent a series of emails to MicroCloud, its counsel, and its warrant agent, inquiring about exercising its Public Warrants on either a cash or cashless basis.

42. In response, MicroCloud acknowledged that the Warrant Shares were not covered by an effective registration statement but ignored Alta's questions concerning its right to exercise.

43. On or about January 23, 2023, the day before MicroCloud's share price reached a high of $17.63, Alta again contacted MicroCloud concerning Alta's interest in exercising its Public Warrants.

44. MicroCloud did not respond.

45. By failing to respond to Alta's multiple requests concerning a cashless exercise, MicroCloud repudiated its obligations under the Warrant Agreement.

46. On January 25, 2023, Alta notified MicroCloud that it was in breach of the Warrant Agreement.

47. Alta again received no response.

48. On February 3, 2023, Alta repeated its demand to exercise its Public Warrants on a cashless basis.

49. On February 7, 2023, Alta received a letter from an unidentified individual at the purported law firm of "Jason and Cole LLP," no public record of which can be found. The letter again acknowledged the absence of an effective registration statement covering the Warrant Shares and indicated that MicroCloud had no plans to attempt to obtain one.

50. Alta requested that the letter's author(s) identify themselves by name, provide direct contact information, and confirm whether they are indeed licensed to practice law in any

U.S. jurisdiction.

51. Alta received no response.

**V. MicroCloud Files a Registration Statement to Issue New Shares to Its Insiders**

52. During the same period MicroCloud has repudiated its obligations to holders of Public Warrants, MicroCloud has taken affirmative steps to create additional value for its insiders.

53. On August 28, 2023, MicroCloud filed a registration statement with the SEC to register approximately nine million new shares of common stock as part of an employee incentive plan.

54. Pursuant to the plan, MicroCloud intends to provide shares of stock and options to provide "additional incentive" to its officers and directors.

55. In contrast, as of the date of this Complaint, MicroCloud has never filed a registration statement to register the Warrant Shares and has never permitted Alta or any other holders to cashlessly exercise their Public Warrants.

56. As a result of MicroCloud's repudiation of the Warrant Agreement and its refusal to permit Alta and other holders to exercise the Public Warrants, Alta and similarly situated Public Warrant holders have sustained millions of dollars in damages.

**CAUSES OF ACTION**

**COUNT I: Breach of Contract —Failure to Use Best Efforts**

57. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

58. The Warrant Agreement is an enforceable contract that MicroCloud expressly assumed.

59. Alta is a beneficiary of the Warrant Agreement and performed any obligations it had.

60. Alta was and remains the beneficial owner of 1,698,449 Public Warrants.

61. As of the date of this Complaint, Alta is in the process of confirming its status as the registered holder of these Public Warrants.

62. Whether as the registered holder or beneficial holder, Alta is the only party with an interest in bringing an action for MicroCloud's breaches of the Warrant Agreement with respect to the Public Warrants beneficially owned by Alta because only Alta sustained damages arising from MicroCloud's breaches of the Warrant Agreement.

63. Section 7.4.1 of the Warrant Agreement requires MicroCloud to:

> ***as soon as practicable***, but in no event later than fifteen (15) Business Days after the closing of its initial Business Combination . . . ***use its best efforts*** to file with the [SEC] a registration statement for the registration, under the Securities Act, of the Ordinary Shares issuable upon exercise of the Warrants. The Company shall ***use its best efforts*** to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration or redemption of the Warrants in accordance with the provisions of this Agreement.

(Emphasis added.)

64. MicroCloud has admitted that the Warrant Shares are not covered by an effective registration statement.

65. MicroCloud has failed to make any attempt to register the Warrant Shares.

66. By failing to make any effort to effectively register the Warrant Shares, MicroCloud breached its obligation to use "best efforts" to register Warrant Shares "as soon as practicable."

67. As a direct and proximate consequence of this material breach of the Warrant Agreement, Alta was denied the opportunity to exercise the Public Warrants and suffered

substantial damages in an amount to be determined at trial.

**COUNT II: Breach of the Warrant Agreement—Failure to Exercise the Public Warrants**

68. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

69. Under Section 7.4.1 of the Warrant Agreement, if a registration statement covering the Warrant Shares "has not been declared effective by the 60th Business Day following the closing of the Business Combination, holders of the Warrants shall have the right . . . beginning on the 61st Business Day after the closing of the Business Combination . . . to exercise such Warrants on a 'cashless basis.'"

70. The Business Combination closed on September 16, 2022.

71. MicroCloud failed to file a registration statement for the Warrant Shares.

72. As of December 16, 2022, 61 business days after the Business Combination closed, Alta had the right, pursuant to Section 7.4.1 of the Warrant Agreement, to exercise its Public Warrants on a cashless basis.

73. After December 16, 2022, Alta attempted on more than one occasion to exercise its Public Warrants on a cashless basis.

74. Despite MicroCloud's admission that it had not registered the Warrant Shares in accordance with the Warrant Agreement, MicroCloud, in material breach of the Warrant Agreement, refused to allow Alta to exercise its Public Warrants on a cashless basis.

75. By representing to Alta and other holders of Public Warrants that the Public Warrants were not exercisable on either a cashless or cash basis and ignoring Alta's efforts to exercise its Public Warrants, MicroCloud repudiated its obligations under the Warrant Agreement.

76. As a direct and proximate consequence of MicroCloud's material breach of the

Warrant Agreement, Alta was denied the opportunity to exercise the Public Warrants and suffered substantial damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

1. Awarding general and compensatory damages to Alta in an amount to be determined at trial but no less than $6,479,583;

2. Awarding Alta costs and disbursements, including attorney's fees, related to this dispute; and

3. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.

Dated: September 1, 2023
       New York, New York

                                        SHER TREMONTE LLP

                                        By: /s/ Justin M. Sher
                                            Justin M. Sher
                                            Amanda Greenfield
                                            Max Tanner
                                        90 Broad Street, 23rd Floor
                                        New York, New York 10004
                                        Tel: 212.202.2600
                                        jsher@shertremonte.com

                                        *Attorneys for Plaintiff Alta Partners, LLC*